IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDUARDO ROSARIO           :    CIVIL ACTION
                            :    NO. 20-2966
              v.       :
                            :
ALEX TORRES PRODUCTIONS, INC.,:
et al.                       :

## O R D E R

**AND NOW**, this **23rd** day of **November, 2021**, having held a November 10, 2021 rule to show cause hearing for why Plaintiff's counsel should not be sanctioned, to which counsel failed to timely respond,[1] it is hereby **ORDERED** that the following sanctions shall be imposed given counsel's inexcusable behavior which is grossly negligent if not fraudulent:[2]

---

[1]    Counsel claims that they attempted to file a response by the October 25, 2021 deadline and attempted to email a copy of the response to chambers. Both alleged attempts failed and counsel inexcusably neglected to follow up on either attempted submission until after the rule to show cause hearing. The tardy response mostly attempts to shift blame and does not assuage the Court's concerns.

[2]    The troubling aspects of this ADA discrimination case ("Rosario II") reach back to an identical case filed by the Lento Law Group, Civ. No. 19-2222 ("Rosario I"). Rosario I was filed on behalf of the same Plaintiff and against the same Defendants: an establishment called Red Wine Restaurant in Pennsylvania and an event promoter called Alex Torres Productions from Florida. Plaintiff contends in both cases that he attempted to enter the Red Wine Restaurant to attend a performance promoted by Alex Torres Productions, but the venue was not wheelchair accessible. Indeed, the Rosario I and Rosario II complaints are identical in substance. The Court held a

1

1.    The Lento Law Group and Joan Feinstein are **BARRED** from further representation of the Plaintiff. The pro hac vice status of Keith Altman is **REVOKED** and he is also **BARRED** from further representation of the Plaintiff. The Clerk of Court is directed to terminate their representation on the docket. **By January 24, 2022**, Plaintiff shall retain new counsel. Failure to obtain new counsel or continue the case pro se may result in the case being dismissed for failure to prosecute.

---

December 20, 2019 pretrial conference in Rosario I at which Plaintiff's counsel failed to appear. After contacting Plaintiff's counsel, Steven Feinstein, by telephone during the hearing, and after several disturbing revelations during that telephone call, in January 2020 the Court dismissed the case without prejudice for lack of prosecution and, in February 2020, referred Steven Feinstein and Joseph Lento, as the manager of the Lento Law Group, to the Disciplinary Board of the Supreme Court of Pennsylvania. See Civ. No. 19-2222 ECF Nos. 9 & 16.

On June 4, 2020, Joseph Lento filed a complaint identical to the Rosario I complaint (except it was now signed by Joan Feinstein of the Lento Law Group) in the District of New Jersey. However, Lento voluntarily dismissed the case four days later, claiming it should have been filed in this court. On June 19, 2020, Joan Feinstein filed Rosario II in the Eastern District of Pennsylvania (utilizing a complaint identical to the complaints filed in Rosario I and the New Jersey case), but did not mark the case as related to Rosario I which is required by Local Rule of Civil Procedure 40.1(b)(3). As a result, the case was assigned to another judge. Only when the magistrate judge who had been assigned to Rosario I was also assigned to Rosario II did the court discover the omission and Rosario II was reassigned to this Court. Counsel's actions appear to be an impermissible attempt to judge shop and evade adjudication by this Court.

2

2.    The default entered against Defendant Alex Torres Productions, Inc. on August 20, 2020 is **STRICKEN**;[3] and

3.    Joan Feinstein, Keith Altman, Joseph Lento, and Lento Law Group are **REFERRED** to the Disciplinary Board of the Supreme Court of Pennsylvania given that:

a.    Joan Feinstein and Joseph Lento are licensed to practice law in the Commonwealth of Pennsylvania and are providing legal services in the Commonwealth as members of the Lento Law Group. Keith Altman, an out-of-state attorney, is subject to the Pennsylvania Rules of Professional Conduct by virtue of his pro hac vice admission;

---

[3]    When this Court dismissed Rosario I, it ordered that "[i]f the complaint is refiled, it shall include legal authority for the proposition that a promoter may be held liable under the circumstances presented in this case," since there did not appear to be any obvious ADA liability for an event promoter under the facts provided. Civ. No. 19-2222 ECF No. 9. In the Rosario II complaint, counsel failed to provide such authority. However, in its belated response to the rule to show cause, counsel claims that the inclusion of Alex Torres Productions is justified based on negligence cases in which event sponsors were held to have a duty of care. This is an ADA case and Plaintiff has not alleged any personal injury/negligence claims. Therefore, the cases cited by counsel could not have given a reasonable attorney a good faith belief that Alex Torres Productions could be liable under the ADA as an event promoter. Counsel also suggested at the hearing that there may have been some contract between Red Wine Restaurant and Alex Torres Productions which would have made the latter responsible for the ADA compliance of the former's venue. This theory is pure speculation and also could not have given counsel a good faith belief of promoter liability.

b.    Joseph Lento has supervisory or managerial authority over Lento Law Group; and

c.    the conduct of Joan Feinstein, Keith Altman, Joseph Lento, and the Lento Law Group may constitute violations of Pennsylvania Rules of Professional Conduct 1.1, 1.3, 3.1, 3.3, 4.1, or 5.1;

4.    The Rule to Show Cause (ECF No. 29) is **DISSOLVED**;

5.    The Clerk of Court is directed to mail a copy of this order and all attachments to The Office of Disciplinary Counsel, District 1, 1601 Market Street, Suite 3320, Philadelphia, PA 19103; and

6.    The Clerk of Court is directed to mail a copy of this Order and all attachments to the Lento Law Group, 1500 Market Street, East Tower, 12th Floor, Philadelphia, PA 19102.

**AND IT IS SO ORDERED.**[4]

*Eduardo C. Robreno*
_____
**EDUARDO C. ROBRENO, J.**

---

[4]    Attached to this order are: (1) the Rosario II complaint, (2) this Court's rule to show cause order; (3) the transcript of the rule to show cause hearing, (4) and counsel's out-of-time response to the rule to show cause.

4

IN THE UNITED STATES COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDUARDO ROSARIO | : | CIVIL NO. _____ |
| | : | |
| v. | : | |
| ALEX TORRES PRODUCTIONS, INC. | : | |
| | : | |
| and | : | |
| | : | |
| LA GUIRA, INC. d/b/a RED WINE | : | |
| RESTAURANT | : | COMPLAINT |

## COMPLAINT-CIVIL CASE

**NOW COMES THE PLAINTIFF** and prays, alleges and states as follows:

## PARTIES

1.      Plaintiff, Eduardo Rosario is an adult individual, who at all times relevant hereto is paraplegic who requires the use of a wheelchair at all times for mobility and who resides at 2940 A. Waldorf Avenue, Camden, New Jersey.

2.      Defendant, Alex Torres Productions, Inc., is a foreign corporation or other business entity, authorized to do business in the Commonwealth of Pennsylvania, having its principle place of business located at 651 Weybridge Court, Lake Mary, Fl, 32746. ("Torres")

3.      Defendant, La Guira, Inc. is a corporation or other business entity, organized and existing pursuant to the laws of the Commonwealth of Pennsylvania, which does business as the Red Wine Restaurant, having its principle place of business at 701 Adams Avenue, Philadelphia PA 19124. ("Red Wine")

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 42 U.S.C. §12101 et. seq. because the instant case arises under federal law, specifically under the American with Disabilities Act as amended, Subchapter III, § 12182. (42 USC 12182), and its implementing regulations under 28 C.F.R. § 36.101 et seq. Also, the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States; and for actions under laws providing for the protection of civil rights as per 28 U.S.C. § 1343. On this matter, the Court has supplemental jurisdiction over claims based in Pennsylvania State Law as stated in 28 U.S.C. § 1367. Declaratory and injunctive relief is also pursued under 28 U.S.C. §§ 2201 and 2202. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as the Eastern District is the judicial district in which a substantial portion of the events or omissions giving rise to the claims alleged herein occurred. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all triable matters of the instant case.

## FACTUAL ALLEGATIONS

5. At all times relevant hereto, Defendant, Red Wine, owned, controlled and/or was exclusively responsible for the maintenance and condition of a facility which is open to the public known as the Red Win Restaurant, located at 701 Adams Avenue, Philadelphia PA 19124. ("Red Wine")

6. Defendant, Red Wine offered the use of its location to performers to provide entertainment services to its customers.

7.      Customers who which to attend the performances were required to pay an admission fee.

8.      At all times relevant hereto Defendant, Torres, was a promoter who provided entertainers and/or performers to businesses such as Defendant, Red Wine.

9.      Upon information and belief, Defendant, Red Wine, hired Defendant, Torres to promote a comedy show to take place at the Red Wine Restaurant on February 10, 2019.

10.     Defendant, Torres was responsible to ensure that accommodations for the show were compliant with the Americans with Disabilities Act of 1990, as amended 42 USC, Chapter 126, 12101 et. seq., ("ADA") and the local equivalency thereof.

11.     Plaintiff purchased a ticket to the comedy show after confirming that the Red Wine Restaurant was accessible to person in a wheelchair.

12.     On February 10, 2019, Plaintiff, a resident of New Jersey was denied participation and/or use of the facilities under the control and management of Defendants, because said facilities were neither fully accessible and/or independently usable to people who ride wheelchairs, to wit, the comedy show was on a lower floor which was only accessible by stairs.

13.     The Red Wine Restaurant is a place of public accommodation under the meaning of the ADA, as per 42 USC 12181(7)(A)  Plaintiff has a mobility disability that substantially limits one or more of his major life activities, including walking and climbing stair and thus is disabled under the meaning and pursuant to the ADA

14.     Plaintiff, who requires a wheelchair at all times, was unable to access the lower floor, where rooms and amenities under control of Defendants, are located.

15.     A guest elevator was not available and alternatives for access were not offered, although Plaintiff was assured that the facility was wheelchair accessible.

16.     Plaintiff suffered denial of equal services and access as compared to other venue guests not having a mobility disability, humiliation resulting from being singled out as a person with a disability and the inconvenience of having the added inconvenience being unable to attend the advertised show.

17.     The lower floors of the Red Wine lack minimum accessibility requirements under the ADA and its interpreting rules and regulations, as contained in the Code of Federal Regulations.

18.     A public accommodation shall make reasonable modifications in, practices, or procedures when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities. 42 U.S.C. §12182(b)(2)(A)(ii); 28 C.F.R. §36.302(a). The defendant discriminated against the plaintiff based upon the plaintiff's disability by (a) failing to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability.

19.     Lack of access and denial of participation and "…full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation…" to Plaintiff is exclusively due to Defendants' failure to observance, of among other statutes, ADA's minimum accessibility requirements for commercial facilities, more specifically Section 12182 et. seq. of ADA, as amended, which prays as follows:

"Prohibition of discrimination by public accommodations

(a) General rule
No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.
 (b) Construction
        (1) General prohibition
            (A) Activities

(i)     Denial of participation

It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

(ii)     Participation in unequal benefit

It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals.

(iii)     Separate benefit

It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others.

(iv)     Individual or class of individuals

For purposes of clauses (i) through (iii) of this subparagraph, the term "individual or class of individuals" refers to the clients or customers of the covered public accommodation that enters into the contractual, licensing or other arrangement.

(B) Integrated settings

Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

(C) Opportunity to participate

Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

20.     The ADA, as amended, was enacted on July 26, 1990. It was at the time the first comprehensive federal civil rights law prohibiting discrimination due to a disability. The statute is meant to protect the rights of individuals with disabilities in the areas of employment, access to both State and local government services, as well as places of public accommodation and transportation.

21.     "In enacting the ADA, Congress adopted two distinct systems for regulating building accessibility: one to apply to existing facilities (those designed and constructed for occupancy before January 26, 1993) and another to apply to later-constructed facilities. 42 U.S.C. §§ 12183(a)(1) and 12182(b)(2)(A)(iv).

22.     The grandfathered facilities must remove barriers to access only to the extent that such removal is "readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). "Readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9)." See Long v. Coast Resorts, Inc., 267 F.3d 918.

23.     Title III of the former, requires places that provide public accommodation to comply with ADA standards and to be readily accessible to, and usable by, individuals with disabilities, as per 42 U.S.C. §§ 12181-89.

24.     Defendants are required by the ADA to remove existing architectural barriers when such removal is readily achievable for places of public accommodation that were built prior to January 26, 1992, according to and 42 U.S.C. § 12182(b)(2)(A)(iv), and its rules and regulations under 28 C.F.R. § 36.304(a).

25.     The ADA lists factors for determining whether a measure is "readily achievable", looking at the difficulty and expense of the measure as balanced against the resources available to the covered entity. These factors are:

- the nature and cost of the action needed under the (ADA);

- the overall financial resources of the facility or facilities involved in the action;

- the number of persons employed at such facility;

- the effect on expenses and resources or the impact otherwise of such action upon the operation of the facility;

- the overall financial resources of the covered entity, the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and

- the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity. (42 § U.S.C. 12181(9); 28 C.F.R. § 36.304). "Plaintiff bears the initial burden of production to present evidence that a suggested method of barrier removal is readily achievable, i.e., can be accomplished easily and without much difficulty or expense. If Plaintiff satisfies this burden, Defendant then has the opportunity to rebut that showing. Defendant bears the ultimate burden of persuasion regarding its affirmative defense that a suggested method of barrier removal is not readily achievable." Colorado Cross Disability Coalition v. Hermanson Family Ltd. Partnership I, 264 F.3d 999. Architectural barrier removal should comply with ADAAG to the extent of being readily achievable. 28 C.F.R. §36.304(d)(1); ADA Technical Assistance Manual III-4.4300: Pickern v. Best Western Timber Cove Lodge Marina Resort, 2002 WL 202442. See also D'Lil v.

Stardust Vacation Club, 2001 WL 1825832 (finding ADAAG "valuable guidance" even with respect to existing facilities)

26.     In accordance with the aforementioned, If there has been alteration to Defendants' facilities since January 26, 1992, Defendants are then required to ensure to the maximum extent feasible, that the altered portions of the facilities are readily accessible to, and usable by individuals with disabilities, including individuals who use wheelchairs, as per 28 C.F.R. § 36.402.

27.     Alternatively, If the Defendants' facilities were designed and constructed after January 26, 1992, as defined in 28 C.F.R. § 36.401, then the Defendants' facilities must be readily accessible to and usable by individuals with disabilities as defined by the ADA.

28.     Architectural barriers removal could be readily achieved, and access easily provided if Defendant executes simple alterations to the facilities such as elevators, commercial vertical platform wheelchair lifts, inclined wheelchair stair lifts, regular inclined ramps and the proper placement of bathroom fixtures in the guest rooms.

29.     All disabled Pennsylvanians are entitled to full and equal accommodation, advantages, facilities, and privileges of any place of public accommodation under the Pennsylvania Human Relations Act, 43 P. S. § § 951—963.

30.     Last but not least, the law mandates that owners of places of public accommodations remove architectural barriers to ensure that individuals with disabilities are not excluded because of their reliance on a mobility device, as per The Pennsylvania Human Relations Act and applicable code provisions.

31.     Thus, the ADA and Pennsylvania Law impose on the Defendants a mandatory requirement for places of public accommodation accessible to disabled individuals.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT

32. All prior allegations are herein re-alleged and incorporated into this cause of action.

33.     Plaintiff possesses a qualified disability under the meaning of the ADA, to wit, a mobility-related disability that requires the use of a wheelchair at all times. See 42 U.S.C.§ 12131(2).

34.     Title III of the American with Disabilities Act, as amended, mandates that persons with disabilities are entitled to equal access to places of public accommodation. Failure to provide said access is considered to be discrimination under the meaning of the law.

35.     Compliance with Title III of the ADA means that public accommodation facilities must be readily accessible to, and independently usable by, disabled persons. 42 U.S.C. §§ 12181-89 Accessibility standards are specified and codified under 28 C.F.R. § Pt. 36.

36.     Red Wine is a place of public accommodation as per 42 U.S.C. § 12181(7)(E).

37.     Defendant has failed to remove architectural barriers and/or alter its facilities in order to make them readily accessible to people with disabilities according to 42 U.S.C. § 12183(a)(1).

38.     Defendants have discriminated against plaintiffs by failing to provide a full and equal opportunity to enjoy the services Defendants provide, as per 42 U.S.C. §§ 12182, 12183(a)(1). 23. Defendants inobservance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate by means of 42 U.S.C. § 12182, as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE PENNSYLVANIA
## HUMAN RELATIONS ACT, 43 P. S. § § 951—963

39.     All prior allegations are herein re-alleged and incorporated into this cause of action.

40.     The Pennsylvania Human Relations Act, is comprised of the Pennsylvania Human

Relations Act, 43 P. S. § § 951—963 (which provides the substance of the law) and Chapter 44

of the Pennsylvania Code, "Discrimination On The Basis Of Handicap Or Disability". ("PHRA")

41.     In general, disability discrimination claims under the PHRA rise or fall in tandem

with disability discrimination claims brought pursuant to the federal ADA.

42.     Defendants are subject to PHRA because the Red Wine Restaurant is a place of

public accommodation as defined by this statute, as well as the ADA.

43.     The PHRA reads:

The opportunity for an individual to obtain employment for which he is qualified,
and to obtain all the accommodations, advantages, facilities and privileges of any
public accommodation and of any housing accommodation and commercial
property without discrimination because of race, color, familial status, religious
creed, ancestry, handicap or disability, age, sex, national origin, the use of a guide
or support animal because of the blindness, deafness or physical handicap of the
user or because the user is a handler or trainer of support or guide animals is hereby
recognized as and declared to be a civil right which shall be enforceable as set forth
in this act.

44.     The law's definition of "public accommodation" includes

accommodation, resort or amusement which is open to, accepts or solicits the
patronage of the general public, including but not limited to inns, taverns,
roadhouses, hotels, motels, whether conducted for the entertainment of transient
guests or for the accommodation of those seeking health, recreation or rest, or
restaurants or eating houses, or any place where food is sold for consumption on
the premises, buffets, saloons, barrooms or any store, park or enclosure where
spirituous or malt liquors are sold, ice cream parlors, confectioneries, soda
fountains and all stores where ice cream, ice and fruit preparations or their
derivatives, or where beverages of any kind are retailed for consumption on the
premises, drug stores, dispensaries, clinics, hospitals, bathhouses, swimming pools,
barber shops, beauty parlors, retail stores and establishments, theaters, motion

picture houses, airdromes, roof gardens, music halls, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, gymnasiums, shooting galleries, billiard and pool parlors, public libraries, kindergartens, primary and secondary schools, high schools, academies, colleges and universities, extension courses and all educational institutions under the supervision of this Commonwealth, nonsectarian cemeteries, garages and all public conveyances operated on land or water or in the air as well as the stations, terminals and airports thereof, financial institutions and all Commonwealth facilities and services, including such facilities and services of all political subdivisions thereof, but shall not include any accommodations which are in their nature distinctly private.

45.     The statute makes it illegal for any person in the position of either Defendants to with refuse withhold or deny any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement on the basis of a disability.

46.     Plaintiff is an individual with disabilities within the definition set forth by the PHRA. As such, he is an individual with a physical impairment, that prevents the exercise of walking, a normal bodily function.

47.     The PHRA makes it unlawful for an owner of a place of public accommodation to deny an individual with a disability, directly or indirectly, any of the advantages, facilities, or privileges of such a place of public accommodation. Defendants have failed to remove architectural barriers in Red Wine.

48.     Prior allegations in the present instance case, are also alleged herein as they are related to the human rights violations under PHRA forming the basis of this cause of action, case and controversy.

49.     Discrimination takes place once an owner of a public accommodation facility refuses to remove architectural barriers present at said facility, or refusal to take steps necessary to ensure that a disabled person that uses a mobility device is not excluded or denied services at places of public accommodation. Again, Defendant in the instant case has failed to remove architectural barriers, contrary to the PHRA.

50. According to the PHRA all persons in the Commonwealth of Pennsylvania are entitled to full and equal accommodations, advantages, facilities and privileges of any place of public accommodation unless limited otherwise by law.

51. Plaintiff is entitled to protection and remedies under PHRA as any other person in the Commonwealth of Pennsylvania; to wit, full and equal accommodations, advantages, facilities and privileges of any place of public accommodation.

52. It is unlawful to discriminate against a person based on a disability, under PHRA. Defendants have incurred in violation of Pennsylvania Law by discriminating against Plaintiff by operating a facility that does not provide full and equal privileges to people with disabilities who rely on devices like wheelchairs for mobility.

53. Defendants' failure to observe the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate by means of PHRA as well as per the ADA and its implementing regulations.

54. Defendants' failure to observance of the law is ongoing and continuous, requiring declaratory and injunctive relief appropriate by means of PHRA as well as Fed. R. Civ. P. 57, and 28 U.S.C. § 2201 as well as per the ADA and its implementing regulations.

55. Plaintiff alleges and affirms:

1) He has suffered a personalized and concrete injury-in-fact of a legally cognizable interest; that is, Plaintiff was denied by Defendants of access and participation of; and the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations provided by Red Wine, as guaranteed under Federal Law and State Law

2) The Plaintiff's injury is traceable to the Defendants' conduct, as denial of participation and equal access to services is exclusively due to Defendants' lack of implementation

of removal of architectural barrier and accessibility design implementation for the benefit of people with disabilities, again as mandated by State and Federal Law (3) It is likely, as opposed to speculative, that a favorable court decision will redress the plaintiff's injury, as injunctive relief provided by the Court on its day, will provide for the removal of architectural barriers present that impede the provision of equal access and services to Plaintiff at the facilities of Red Wine, which effectively resolves the legal issue in this instance case.

## RELIEF REQUESTED

The Plaintiff again demands trial by jury on all issues of the instant case, pursuant to Rule 38 of the Federal Rules of Civil Procedure; and that the Court provides:

      a.      Declaratory Judgement against Defendants based on a violation of the Americans with Disabilities Act, by means of remedies enforced through 42 U.S.C. §12188(a)(1); Pennsylvania Human Relations Act and title 44 of the Pennsylvania Code, because the Defendants' facilities as described above are inaccessible to, and not independently usable by, individuals with disabilities who use devices for purposes of mobility;

      b.      A Permanent Injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a) enjoining the Defendant from further discriminating against disabled persons, and requiring Defendant to remove architectural barriers present at the Red Wine Restaurant by all means necessary to bring said facilities into compliance with the ADA, its rules and regulations, so access is always provided to disabled individuals with mobility issues, now and from on henceforth.

      c.      Damages, in an amount to be determined by this Court;

d.  Reasonable attorney's fees and costs of suit; and

e.  Any other relief as this Court sees fit to provide to resolve the issues in the

instant case.

**RESPECTFULLY,**

**LENTO LAW GROUP, P.C.**

BY:_____

JOAN A. FEINSTEIN, ESQUIRE
Lento Law Group, P.C.
1500 Market Street, 12th Floor, East Tower
Philadelphia, Pennsylvania 19102
267-833-0200
Jafeinstein@Lentolawgroup.com
Attorney for Plaintiff

Dated: June 19, 2020

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Eduardo Rosario | Alex Torres Productions, Inc. and La Guira, Inc., d/b/a/ Red Wine Restaurant |
| **(b)** County of Residence of First Listed Plaintiff  Camden County<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant  Bucks<br>*(IN U.S. PLAINTIFF CASES ONLY)*<br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)*<br>Lento Law Group, P.C., 1500 Market Street, 12th Floor - East Tower, Philadelphia, PA 19102- 267-833-0200 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☒ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
violation of Americans with Disabilities Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____  DOCKET NUMBER _____

DATE _____

SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 02/19)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**    **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**    **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**    **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**    **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**. (See Section III below; NOTE: federal question actions take precedence over diversity cases.)**

**III.**    **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**    **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**    **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.

Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket. **PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**    **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**    **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**    **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 2940 A. Waldorf Avenue, Camden, NJ 08105 _____

Address of Defendant: _____ 651 Weybridge Court, Lake Mary, FL 32746 _____

Place of Accident, Incident or Transaction: _____ Red Wine Restaurant, 701 Adams Avenue, Philadelphia, PA 19124 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?　Yes ☐　No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?　Yes ☐　No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?　Yes ☐　No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?　Yes ☐　No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 06/15/2020 _____ *Must sign here* _____ 310392

_____　_____　_____
　　　　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　　*Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☐ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☑ 11. All other Federal Question Cases
　*(Please specify):* _____ Amercian Disabilities Act _____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
　*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _____　_____　_____
　　　　　　　　　　　*Sign here if applicable*　　　　　　
　　　　　　　　　　　*Attorney-at-Law / Pro Se Plaintiff*　　*Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Eduardo Rosario

v.

Alex Torres Productions, Inc. etc.

CIVIL ACTION

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                         ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                 ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            ( )

6-19-20

**Date**

267-833-0200

**Telephone**

267-833-0300

**Attorney-at-law**

**FAX Number**

**Attorney for**

jfeinstein@lentokusjgroup.com

**E-Mail Address**

(Civ. 660) 10/02

## Civil Justice Expense and Delay Reduction Plan
## Section 1:03 - Assignment to a Management Track

(a)    The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)    In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)    The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)    Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)    Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
## (See §1.02 (e) Management Track Definitions of the
## Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

EDUARDO ROSARIO                    :     CIVIL ACTION
                                   :     NO. 20-2966
          v.                       :
                                   :
ALEX TORRES PRODUCTIONS, INC.,:
et al.                             :

# O R D E R

**AND NOW**, this **30th** day of **September, 2021,** after an

August 24, 2021 status and scheduling conference, and in light

of the multiple irregularities present in this case, it is

hereby **ORDERED** that a rule to show cause is **ISSUED** why

Plaintiff's counsel Keith Altman and Joan Feinstein should not

be sanctioned[1] for their: (1) failure to accurately certify that

there were no related cases in violation of Pennsylvania Rule of

Professional Conduct 3.3(a); and (2) failure to provide

authority in the complaint regarding promoter liability as

ordered by the Court on January 13, 2020 (19-cv-2222 Doc. No.

9).[2]

---

[1] Sanctions could include monetary fines, referral to the
Disciplinary Board, or barring Mr. Altman or Ms. Feinstein from
representing Plaintiff.

[2] The Court is also concerned why Mr. Altman's address listed on
the docket is the Lento Law Firm in Philadelphia but his
application for pro hac vice lists his practice as The Law Firm
of Keith Altman in Farmington Hills, Michigan.

The Rule is answerable in person[3] on **November 10, 2021 at 2:00 p.m. in Courtroom 15A, U.S. Courthouse, 601 Market Street, Philadelphia, Pennsylvania.**

Mr. Altman and Ms. Feinstein shall also file a response to the Rule to Show Cause no later than **October 25, 2021.**

It is further **ORDERED** that the case is **STAYED** pending further order of the Court.

**AND IT IS SO ORDERED.**

_Eduardo C. Robreno_
**EDUARDO C. ROBRENO, J.**

---

[3] Defendants and their counsel may attend the Rule to Show Cause hearing but are not required to appear.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

EDUARDO ROSARIO,   : CIVIL NO. 20-2966
         :
     Plaintiff :
         :
         :
         :
         :
   v.      :
         :
         :
         :
         :
         :
ALEX TORRES PRODUCTIONS, : Philadelphia, Pennsylvania
INC., et al.,    : November 10, 2021
    Defendant : 2:07 p.m.

- - -

TRANSCRIPT OF SHOW CAUSE HEARING
BEFORE THE HONORABLE EDUARDO C. ROBRENO
UNITED STATES DISTRICT COURT JUDGE

- - -

APPEARANCES:

For the Plaintiff: KEITH ALTMAN, ESQUIRE
        JOAN A. FEINSTEIN, ESQUIRE
        Lento Law Group, P.C.
        1500 Market Street
        12th Floor
        East Tower
        Philadelphia, PA 19102


For the Defendant: JOHN J. GRIFFIN, ESQUIRE
        Law Office of John J. Griffin
        P.O. Box 571
        Lafayette Hill, PA 19444

2

Audio Operator:         Carl Hauger

Transcribed By:         Michael T. Keating

- - -

          Proceedings recorded by electronic sound
recording; transcript produced by computer-aided
transcription service.

- - -

Case 2:20-cv-02945-GEKP Document 66-4 Filed 11/24/21 Page 28 of 81

1  (The following was heard in open court at

2  2:07 p.m.)

3  THE COURT:  Good afternoon.  Please be

4  seated.

5  MR. ALTMAN:  Thank you.

6  (Pause in proceedings.)

7  THE COURT:  You may remove your mask when

8  you're speaking to the Court.  So today is a hearing

9  on a rule to show cause on why plaintiff's counsel,

10  Keith Altman and Joan Feinstein, both present in the

11  court I take it, should not be sanctioned for their

12  failure to accurately certify that there were no

13  related cases in violation of Pennsylvania Rule of

14  Professional Conduct 3.3A; and two, failure to

15  provide authority in the complaint regarding

16  promoter's ability, as ordered by the Court on

17  January 13th, 2020.

18  Additionally, the Court had raised issues

19  concerning the viability of the Lento Law Firm in

20  Philadelphia given that the pro hac vice form, which

21  was filed by the law firm, listed the address of that

22  law firm as Farmington Hills, Michigan.

23  The Court's order to show cause also

24  provided that a response to the rule was to be filed

25  by October 25th of 2021.  As of this morning, no

4

1  response has been filed.  So that's where we are.

2  So, Ms. Feinstein or Mr. Altman, would you like to

3  address those issues?

4          MR. ALTMAN:  I would, Your Honor, and I

5  have a severe visual disability.  Would it be okay if

6  I argued seated?

7          THE COURT:  Absolutely, you may do so.

8          MR. ALTMAN:  Thank you, Your Honor.  Your

9  Honor, let me address the filing issue.  We've had

10  technical issues in terms of filing that document.

11  On the 25th, I attempted to file the document through

12  my ECF credentials.  It did not allow me to do so.  I

13  sent a copy to chambers to establish the fact that

14  the document was ready on time.  It was sent to

15  chambers.  Immediately the next morning, my team

16  reached out to your chambers and the ECF help desk,

17  and over the last two weeks, have had numerous

18  attempts to correct the issue and get the document

19  filed.

20          THE COURT:  So you're saying that you sent

21  a hard copy to chambers?

22          MR. ALTMAN:  I did not send --

23          THE COURT:  Oh.

24          MR. ALTMAN:  -- a hard copy to chambers,

25  Your Honor.  We -- I sent by email a copy to chambers

1  that day.  I put my team on it the next day in an

2  attempt to rectify the problem.  They spoke to the

3  ECF help desk.  They made numerous calls, which can

4  all be documented, to get this document filed.  This

5  was also the very time where I lost my left eye,

6  crashed during this time, and so dealing with severe

7  medical disabilities has affected that.

8         THE COURT:  But let me ask you the

9  technical aspect of it.  You said that on October

10 25th, you had difficulties filing through ECF so that

11 you reached out to my chambers and got some guidance,

12 and then sent us an email with a copy of the

13 response?

14        MR. ALTMAN:  Your Honor --

15        THE COURT:  Did I understand that?

16        MR. ALTMAN:  -- before I even spoke to your

17 chambers to establish that --

18        THE COURT:  Yes.

19        MR. ALTMAN:  -- we had the document

20 prepared on the 25th, as Your Honor ordered --

21        THE COURT:  Yes.

22        MR. ALTMAN:  -- I emailed a copy on the

23 25th to your chambers before I even spoke to anyone,

24 and to brother counsel, to establish that we had

25 prepared a response, we had submitted a response.

6

And I figured I would deal with the technical issues
the next morning.

The next morning, my team reached out to
your chambers to tell them what had happened.  They
also tried to contact the ECF help desk to see if we
could figure out why we couldn't get the document
filed.  They have made numerous, consistent attempts
since October the 25th to no avail.  For some reason,
we cannot seem to file anything.  I apologize if
maybe one of the alternatives would have been to
file -- to file a paper copy with the Court, but we
had believed that by emailing it to the Court and to
brother counsel and having advised chambers, that
that was adequate.

THE COURT:  And do you know or can you
identify in the help desk who attempted to help you
or not help you so that we can follow up on that?
That seems to be a real serious problem.

MR. ALTMAN:  Your Honor, I could not, but I
would be happy to provide, if Your Honor would
accept, a --

THE COURT:  Okay.

MR. ALTMAN:  When I get back I'll get with
my team to give me, you know, documentation --

THE COURT:  Now --

7

```
 1          MR. ALTMAN:  -- of their efforts that I can
 2   provide.
 3          THE COURT:  -- Mr. Vance, do we know
 4   anything about an email sent to our chambers on
 5   October 25th?
 6          COURTROOM DEPUTY:  I just went back and we
 7   checked our chambers account and our email account.
 8   We have no email from Mr. Altman.
 9          THE COURT:  Okay.
10          MR. ALTMAN:  Your Honor, I know --
11          COURTROOM DEPUTY:  Other than -- other than
12   today's email.
13          THE COURT:  Today's email --
14          COURTROOM DEPUTY:  Today's email just --
15          THE COURT:  -- from your office telling us
16   about your accommodations.  That came yesterday I
17   think.
18          COURTROOM DEPUTY:  It might have been
19   yesterday.
20          THE COURT:  Yes.
21          MR. ALTMAN:  Your Honor, I will attest to
22   that --
23          THE COURT:  Yes.
24          MR. ALTMAN:  -- I sent this email on that
25   night.  I can try to track through, but --
```

1       THE COURT:  But it -- but since October

2    25th -- that's been two weeks -- we still haven't

3    received anything.

4       MR. ALTMAN:  My team has made consistent

5    efforts to do that, Your Honor.  I will -- I will --

6    if you would like me right now, I will call my team

7    and ask them to email it right this moment --

8       THE COURT:  No.  No, I don't --

9       MR. ALTMAN:  -- if you would like.

10      THE COURT:  -- think we need to do it right

11   now, but we certainly need to have some verification

12   from whoever is in your team as to these efforts

13   because in two weeks, you should have been able to

14   resolve this issue.

15      MR. ALTMAN:  I agree, Your Honor, and I

16   know that my team did it and I've been asking them

17   multiple times.  If you would give us until -- could

18   I have until Monday to get my team to --

19      THE COURT:  That would be fine.

20      MR. ALTMAN:  -- document their efforts for

21   you?

22      THE COURT:  Sure, that would be fine.

23      MR. ALTMAN:  Okay.  I will --

24      THE COURT:  Now --

25      MR. ALTMAN:  I will also have my team, as

9

1  soon as court concludes, just make sure that we email

2  a copy of the document.  And I apologize for not

3  bringing one here.  I did not realize you didn't have

4  one.  I apologize.

5           THE COURT:  Do you have one for yourself

6  here?

7           MR. ALTMAN:  I do not.  I couldn't -- Your

8  Honor, I have lost the ability to read.

9           THE COURT:  Okay.  Okay.  So let's go

10  through the rule, failure to accurately certify that

11  the -- well, first of all, Mr. Altman, tell me who

12  you are and what is your relationship to this firm?

13           MR. ALTMAN:  Okay.  My name is Keith

14  Altman.  I am the principal of the Law Office of

15  Keith Altman.  At the time the case was filed, I was

16  going to be entering into an of counsel relationship

17  with the Lento Law Group on a fairly systematic

18  basis.  We were going to work together, and maybe

19  more formally, I was going to join the firm.

20  Ultimately, we decided not to pursue that.  In any

21  event, the intention was that I would be lead counsel

22  on this matter after it had been filed.  Ms.

23  Feinstein would be the local counsel.  Under the

24  general direction of the Lento Law Group, I would

25  come in, be pro hac-ed into the matter, and I

1  would -- I would act as lead counsel in the matter,

2  which is what happened.

3        Addressing your concern over the addresses,

4  I suppose that in the -- it was March of this year

5  where we decided that we were not going to proceed

6  that kind of relationship with one another, and we

7  simply agreed that we would be joint counsel on this

8  particular matter, still with me filling in as lead

9  counsel on the matter in terms of working on the

10  case.  And I've worked with brother counsel.  He and

11  I have been in communication on this matter since.

12  So I have been the one really responsible after my

13  pro hac vice application was granted.  I was really

14  the on doing the work on the case.

15        THE COURT:  Have you spoken to the

16  plaintiff in this case?

17        MR. ALTMAN:  Yes.

18        THE COURT:  Okay.  That was after the

19  complaint was filed?

20        MR. ALTMAN:  Correct.

21        THE COURT:  Yes.  Okay.

22        MR. ALTMAN:  Correct, Your Honor.  And I'm

23  prepared to -- I'm prepared to address anything that

24  Your Honor has raised.  I know you don't have the

25  advantage of having our -- you know, our document,

1 but I am prepared to address any of your questions at

2 this time.

3       THE COURT:  Now, Ms. Feinstein, tell me

4 also about yourself and what's your connection to the

5 Lento Law Firm --

6       MS. FEINSTEIN:  Sure.

7       THE COURT:  -- or to Altman's law firm?

8       MS. FEINSTEIN:  Sure.  Oh, I'm sorry, Your

9 Honor.  My name is Dr. Joan Feinstein.  I'm a

10 clinical psychologist and an attorney, and I am

11 co-counsel on just a few cases with the Lento Law

12 Firm.

13       THE COURT:  Okay.  You're admitted in

14 Pennsylvania?

15       MS. FEINSTEIN:  I am.

16       THE COURT:  Okay.  And when you -- where is

17 your office?

18       MS. FEINSTEIN:  My office right now is out

19 of my home --

20       THE COURT:  Okay.

21       MS. FEINSTEIN:  -- since Covid.

22       THE COURT:  But what is your relationship

23 to the Lento Law Firm?

24       MS. FEINSTEIN:  I know Joe Lento for

25 several years and I'm co-counsel on a few cases with

1  him.  I consult on some cases.

2          THE COURT:  Mr. Lento, he's from New

3  Jersey, is that right, or --

4          MS. FEINSTEIN:  I believe he lives in

5  Narberth, Pennsylvania.

6          THE COURT:  Oh, in Pennsylvania.  Okay.

7  Now, does the Lento Law Firm, to your knowledge, have

8  a physical presence in Pennsylvania?

9          MS. FEINSTEIN:  They do.

10          THE COURT:  Okay.  Where are they located?

11          MS. FEINSTEIN:  1500 Walnut Street.

12          THE COURT:  Okay.

13          MS. FEINSTEIN:  And I believe it's suite

14  500.

15          THE COURT:  Okay.  Now, when did you enter

16  an appearance in this -- in this case?  Let's see.

17          (Pause in proceedings.)

18          THE COURT:  Let me see here.

19          MR. ALTMAN:  Your Honor, may I?

20          THE COURT:  Yes.

21          MR. ALTMAN:  I believe the case was filed

22  in late May or early June of 2020, and Ms. Fein --

23          THE COURT:  Yes?

24          MR. ALTMAN:  -- and Ms. Feinstein was

25  the -- when the original complaint was filed, Ms.

1  Feinstein was the attorney --

2        THE COURT:  Yes.

3        MR. ALTMAN:  -- of record, listing me as

4  pro hac vice to be applied for.

5        THE COURT:  Now, at that time, there had

6  been a case that had been dismissed by the Court, and

7  we have a relatedness rule.  And this case, which

8  would have been filed within the time that required

9  you to identify the case as related, that was not

10  done.

11        MS. FEINSTEIN:  You're talking about the

12  (indiscernible) --

13        THE COURT:  Yes, your -- this -- the

14  particular case here, which was identical to a prior

15  case that the Court had dismissed, was filed and it

16  should have been marked related and assigned to me.

17  Rather, it was not marked related, so it was assigned

18  to Judge Goldberg.  Judge Goldberg had referred the

19  matter to the magistrate judge, Judge Strawbridge,

20  and Judge Strawbridge, who discovered that these

21  cases were related.

22        MR. ALTMAN:  Your Honor, that's 100 percent

23  true.

24        THE COURT:  Okay.

25        MR. ALTMAN:  The problem -- here is the

14

issue and the explanation.  There was no intent to
evade Your Honor.  There was a change in personnel
which, frankly, was responsible for the case being
dismissed the first time, if you'll recall.  There
was a change in personnel.  Some eight months after
the case had been dismissed, had elapsed, the
personnel who were involved in refiling this case
were simply not involved in that other case.  It's
not that it was unknown to the firm itself the case
was being filed, but the individuals who were
involved in actually preparing and filing the instant
case were just unaware that it had been filed before.
There was absolutely no intent to evade this Court's
jurisdiction.  If that really was the attempt, there
were many things that could have been done.  They
could have waited the 12 months and filed it and
wouldn't have had to disclose it.  They could have
filed it somewhere else, in New Jersey because
there's a New Jersey connection.  But that isn't the
case.

In fact, Your Honor, I just learned
something I hadn't realized.  When the case was
refiled it was accidentally filed in the District of
New Jersey.  And instead of leaving it there, they
dismissed the case, got a refund, and refiled the

1  case here.  So there's simply -- this is a law office

2  mistake.  Both of the individuals who were involved

3  believed in good faith that this -- that when they

4  filled out those forms, that they were filling them

5  out accurately.  They were not accurate.  That is, in

6  fact, true.  But there was no -- there was no attempt

7  to evade Your Honor's jurisdiction.

8       THE COURT:  Now, the first time, the lawyer

9  who was here representing the plaintiff, candidly --

10  and it's a matter of public record -- testified or

11  stated to the Court that he had never met the

12  plaintiff and that he hadn't done any research other

13  than read the statute, so that when the case was

14  dismissed, one of the provisions for the dismissal

15  was that any subsequent complaint had to provide

16  authority that would make it a plausible claim under

17  Twombly.  And we had specifically the question of

18  whether there was any authority to hold a promoter

19  liable for the failure of the site to provide

20  accommodations consistent with the ADA.  That wasn't

21  done.

22       MR. ALTMAN:  Your Honor, that's also

23  correct.  Through the same lapse of time, that order

24  was just not made available to the people that are

25  involved, but I can tell you that in our response to

1    Your Honor's order, we did provide -- you know, one

2    of the bases is clearly there could be a contractual

3    basis between the -- contractual basis between the

4    promoter and the site, and we found that there is no

5    authority that says that you -- as a matter of law,

6    that a promoter is excluded from liability.  So while

7    absolutely Your Honor ordered that to be done,

8    unfortunately, through that same lapse of time and

9    change of personnel, that particular provision of an

10   order was not made available.  Had it been, of course

11   it would have been complied with.  But we do -- we

12   did in good faith believe that a promoter could be

13   held liable.  We did -- in response to your order,

14   which we will get to you, we did provide, you know,

15   the contractual basis and some case authority on why

16   they're not excluded as a matter of law.

17          I apologize for it not having been there in

18   the complaint as it should have been.  It would have

19   been somewhat unusual to do that, but if Your Honor

20   had ordered that to be done, clearly, we would have

21   done that.

22          THE COURT:  Well, that was ordered in light

23   of the fact that the first complaint did not provide

24   any support for that theory, and the lawyer had said

25   specifically that he had not done any research except

1   to look at the statute when we asked for any case

2   law, and he -- the counsel at that time also stated

3   that he had never met the plaintiff.

4           MR. ALTMAN:  Your Honor, I can't speak for

5   what --

6           THE COURT:  So, therefore, there was a

7   remedial order in order to protect the plaintiff, and

8   that order was not complied with.

9           MR. ALTMAN:  Your Honor, I apologize, it

10  was an eight-month delay between those two -- between

11  those two events, and there was a change of

12  personnel.  It clearly should have been complied

13  with.

14          THE COURT:  Okay.

15          MR. ALTMAN:  But we did -- but we do -- but

16  still I believed at the time, in reviewing the

17  complaint, there was a good faith basis for the

18  promoter having been in -- you know, good faith

19  doesn't mean I have to have a case law, but I believe

20  that absent discovery, seeing the contractual

21  relationship between the two individuals -- I mean,

22  clearly, there could have been a contractual

23  relationship and it might not even be unusual.  But

24  absolutely, it was not complied with.  It should have

25  been complied with.  Had I been aware of it -- had

1    any of the people who ultimately were involved in the

2    filing of the second complaint would have been --

3                THE COURT:  Okay.

4                MR. ALTMAN:  -- aware of it, it would have

5    been addressed.  I will say that the issue was raised

6    by Mr. Torres in front of Judge Goldberg, and Judge

7    Goldberg asked questions of me at that time, and

8    Judge Goldberg was satisfied with my response -- was

9    satisfied the response --

10                THE COURT:  Of course he was unaware of the

11    prior history of this case.

12                MR. ALTMAN:  I understand.  No, no, all I'm

13    saying is -- no, no, I don't mean it from the -- I

14    mean it from the merits perspective --

15                THE COURT:  Yes.

16                MR. ALTMAN:  -- that Judge Goldberg was

17    satisfied that my explanation of why there could be

18    liability was adequate on a merits basis.

19                THE COURT:  Now, when you appeared before

20    Judge Goldberg, did you bring to his attention the

21    prior history of the case?

22                MR. ALTMAN:  I did not, Your Honor.

23                THE COURT:  Okay.

24                MR. ALTMAN:  I did not, and he didn't -- he

25    didn't ask about it, and I didn't --

1          THE COURT:  Well, he wouldn't have known.

2          MR. ALTMAN:  I understand.  I appreciate

3   that.  I did not, Your Honor.  Well, actually, it did

4   come up, of course it did, because Mr. Torres raised

5   it.  So --

6          THE COURT:  Was that before Judge

7   Strawbridge or before Judge Goldberg?

8          MR. ALTMAN:  Before Judge Goldberg.

9          THE COURT:  Okay.

10          MR. ALTMAN:  Mr. Torres raised it.  He

11   raised the very issue that you're raising now about

12   there having to be something in there, and Judge

13   Goldberg inquired of me, Mr. Altman, what's your

14   basis for why he could be in this -- you know, he

15   should be in this complaint?  I don't think -- well,

16   obviously, Judge Goldberg knew about your order at

17   that time.  And, frankly, that was the first time I

18   had ever heard about your order.

19          THE COURT:  Yes.  Okay.  Now, so far, what

20   you have advanced, and apparently it's all written

21   out in your response, is that each of the grounds for

22   the rule to show cause is factually correct except

23   that you have an explanation for that, and,

24   generally, the explanation is administrative foul up,

25   an administrative issue, not a substantive issue but

1   an administrative issue.

2          MR. ALTMAN:  Yes.  Now, from my

3   perspective, Your Honor, I was never involved in the

4   administrative aspects of this case.

5          THE COURT:  Well, but you -- this is your

6   law firm.

7          MR. ALTMAN:  No, it's --

8          THE COURT:  I don't understand that, what

9   you mean by you weren't involved.

10          MR. ALTMAN:  No, no.  No, what I mean, Your

11   Honor, is the failure to identify the previous cases,

12   I had to --

13          THE COURT:  Right.

14          MR. ALTMAN:  -- acknowledge that that was

15   an issue because I was pro hac-ed into the case

16   subsequent to that.  So I was not -- I was never

17   supposed to be --

18          THE COURT:  So who was -- who was the --

19   oh, you mean the initial case?

20          MR. ALTMAN:  No, no, I'm not talking the

21   initial case.  What I'm talking about is Your

22   Honor -- part of the -- Your Honor has raised the

23   issue about --

24          THE COURT:  Yes.

25          MR. ALTMAN:  -- the case-tracking

1  situation.  I was never involved in those -- in those

2  forms being filled out, I never saw them, it was

3  never anything I was supposed to do.

4          THE COURT:  Well, who did that?

5          MR. ALTMAN:  That was done by the Lento

6  Law -- the Lento Law -- and it's the Lento Law Group,

7  to be precise.  That was done by Ms. Feinstein and,

8  you know, prepared -- documents prepared for her.  I

9  had never seen those documents.  I was never part of

10  the administration.  So I -- you know, the

11  administration of the case.  I was pro hac-ed into

12  the case after that took place.  So for me

13  personally, I had nothing to do with those forms

14  being filled out incorrectly.  I never saw them, I

15  never reviewed them, I was never part of that.  I was

16  simply pro hac-ed in subsequent to that point.

17          THE COURT:  Well, what's --

18          MR. ALTMAN:  And --

19          THE COURT:  What happened to the Lento

20  Firm?  That's -- Ms. Feinstein, you're identified in

21  the docket as being the Lento Law Group.

22          MR. ALTMAN:  Well, Your Honor, there

23  were -- there's the Lento Law Firm, which is a

24  separate entity from the Lento Law Group.  That's all

25  I'm trying to say.  They're two separate entities.

1    The Lento Law Group is what's involved in this

2    matter, not the Lento Law Firm.

3              THE COURT:  Well, let's see.

4              (Pause in proceedings.)

5              THE COURT:  Now, Judge Goldberg issued an

6    order, which is docket number 10, requiring a

7    licensed attorney to enter an appearance.  And now,

8    that had to do with the defendant.  Mr. Griffin, is

9    that -- is that what was going on there?

10             MR. GRIFFIN:  Your Honor, that had to do

11   with the defendant --

12             THE COURT:  Oh.

13             MR. GRIFFIN:  -- Alex Torres, that --

14             THE COURT:  Yes.

15             MR. GRIFFIN:  -- was eventually defaulted

16   in the case.

17             THE COURT:  Right.  Right, because he's not

18   an attorney who was representing a corporation.

19             MR. GRIFFIN:  But I had received a number

20   of calls -- and I cannot recall his name -- from an

21   attorney in Florida saying that he wanted to enter

22   his appearance and could I support him on a pro hac

23   vice basis.  I did some research on that and we

24   concluded that because I might potentially

25   counterclaim on him or something, that would not be

1    appropriate, but I told him I would make all efforts

2    to find someone to get him in.

3           I called a number of my colleagues.  As

4    Your Honor knows, I've appeared to you before to do

5    primarily criminal work, and had some names.  And

6    their position was sure, just compensate our time to

7    appropriately get him in pro hac vice, and that

8    attorney did not want to spend any money to do that.

9    And I said look, I can't -- I can't be of any further

10   help than I've already been.

11          THE COURT:  Yes.

12          MR. GRIFFIN:  So Mr. Torres has remained

13   unrepresented with a default judgment --

14          THE COURT:  Well, not a judgment, just a

15   default.

16          MR. GRIFFIN:  Default.

17          THE COURT:  Yes.

18          MR. GRIFFIN:  -- with a default against

19   him.

20          THE COURT:  Okay.

21          MR. ALTMAN:  Which we were -- which we were

22   forced to do, Your Honor, and, clearly, we would

23   vacate to give Mr. Torres an opportunity to -- Alex

24   Torres Productions, to get representations.  I

25   believe the Court just --

24

```
1          THE COURT:  Well, now, let me ask again --
2   let me ask -- let me ask Ms. Feinstein and let her
3   speak for herself, you are on the docket as being
4   associated or in some fashion connected with the
5   Lento Law Group, P.C., is that accurate?
6          MS. FEINSTEIN:  Yes.
7          THE COURT:  Okay.  That's at 1500 Market
8   Street?
9          MS. FEINSTEIN:  I think --
10         THE COURT:  You said Walnut Street before.
11         MS. FEINSTEIN:  I thought it was Walnut
12  Street.
13         MR. ALTMAN:  It is Walnut Street.
14         THE COURT:  Okay.
15         MS. FEINSTEIN:  It's Walnut Street, Your
16  Honor.
17         THE COURT:  It's 12th Floor, East Tower, so
18  it sounds like Market Street.
19         MS. FEINSTEIN:  I think it moved to 1500
20  Walnut Street, Suite 500.
21         THE COURT:  Well, there is a 1500 Walnut,
22  but it doesn't have an east tower.
23         MS. FEINSTEIN:  Okay.
24         THE COURT:  And it's -- so --
25         MR. ALTMAN:  Your Honor, I think they may
```

have moved in the lapse of time between those 18
months.

        THE COURT:  Okay.

        MR. ALTMAN:  The firm currently is at --

        THE COURT:  So they moved to 1500 Walnut
Street?

        MR. ALTMAN:  Correct.  We were there today,
so I can tell you with 100 percent assurance.  I sat
in that office today.

        THE COURT:  Okay.

        MR. ALTMAN:  And Ms. Feinstein is -- you
know, who is the counsel of record, is also --

        THE COURT:  So --

        MR. ALTMAN:  -- located in Pennsylvania.

        THE COURT:  -- tell me about your
association with this -- with this case.  What -- how
did that come about?

        MS. FEINSTEIN:  As I said, I consult -- I'm
co-counsel on just a few cases with --

        THE COURT:  Yes.

        MS. FEINSTEIN:  -- the Lento Law Firm, and
Mr. Lento had told me about the case.  I am a
psychologist interested in disability, and he --

        THE COURT:  Yes.

        MS. FEINSTEIN:  -- told me about the case

26

1    and asked if I would be involved in the case.   I

2    would have a minimal role, and they would bring in

3    another attorney at some point.

4              THE COURT:  They would what?

5              MS. FEINSTEIN:  Bring in another attorney.

6              THE COURT:  Okay.  Okay, but you signed the

7    pleading in the original complaint.

8              MS. FEINSTEIN:  I did.

9              THE COURT:  Now, had you -- had you met Mr.

10   Rosario?

11             MS. FEINSTEIN:  I had not.

12             THE COURT:  Okay.  Well, what do you think

13   of that?  Do you think that's appropriate?

14             MS. FEINSTEIN:  I relied on the firm's

15   judgment.  At that time, Your Honor -- I'm a breast

16   cancer patient and it was during Covid, and --

17             THE COURT:  Yes.

18             MS. FEINSTEIN:  -- I was restricted from

19   meeting people in person.

20             THE COURT:  Yes.

21             MS. FEINSTEIN:  So there was a lot going on

22   during that time.

23             THE COURT:  But you wouldn't do it again?

24             MS. FEINSTEIN:  I would never do it again,

25   Your Honor.

1          THE COURT:  Yes.  Okay.

2          MS. FEINSTEIN:  I'd go by the advice of my

3     oncologist and make that right from the beginning and

4     would never do that again.

5          MR. ALTMAN:  Your Honor, if I -- if I might

6     add, the firm itself though had met with Mr. Rosario

7     and had numerous discussions with Mr. Rosario.  So it

8     is -- while Ms. Feinstein may not have personally met

9     with him, the firm had met with him on multiple

10    occasions, multiple discussions, but the complaint

11    was drafted based upon conversations with Mr.

12    Rosario.

13         THE COURT:  Well, that may be so, but it's

14    not on the docket, and it's her signature which

15    certifies the compliance with Rule 11 and the

16    compliance with the rules.  So it's pretty relevant

17    that somebody else had met with him.  The question is

18    you put her signature and her license behind this

19    complaint and she has to stand behind it.

20         MR. ALTMAN:  Your Honor, I think that she

21    could -- it seems to me that she could reasonably

22    rely upon --

23         THE COURT:  Well, why don't you let her

24    speak for herself?  She's --

25         MR. ALTMAN:  Okay.

1          THE COURT:  She's a lawyer.

2          MR. ALTMAN:  I'm sorry, Your Honor.

3          THE COURT:  Okay?  Now, you yourself are

4 identified here as being in the Lento Law Group, but

5 you claim you're not?

6          MS. FEINSTEIN:  I'm no longer there.

7          THE COURT:  Okay.

8          MS. FEINSTEIN:  At that time, Your Honor --

9          THE COURT:  Yes.

10         MS. FEINSTEIN:  -- I was thinking about

11 more of an association with them, but due to my

12 health issues --

13         THE COURT:  Sure.

14         MS. FEINSTEIN:  -- it's not appropriate,

15 and I would --

16         THE COURT:  Okay.

17         MS. FEINSTEIN:  -- never do --

18         THE COURT:  So you're going to -- are you

19 going to withdraw from this case or are you going to

20 continue?

21         MS. FEINSTEIN:  I was going to ask them

22 to -- after speaking with my physicians, to ask them

23 to find substitute counsel.

24         THE COURT:  And you would like to withdraw

25 here?

1            MS. FEINSTEIN:  I would, Your Honor.

2            THE COURT:  Okay.  Certainly if your health

3    doesn't allow you to fully commit, I think that would

4    be a -- that would be a good thing to do.

5            MS. FEINSTEIN:  Honestly, Your Honor, Dr.

6    Fox, my hematologist/oncologist, did not want me to

7    come today, but I know -- I wanted to --

8            THE COURT:  Yes.

9            MS. FEINSTEIN:  -- come.  I didn't want to

10   disappoint the Court.

11           THE COURT:  I appreciate that.

12           MS. FEINSTEIN:  You're welcome.

13           THE COURT:  Okay.  Well -- now, is -- so

14   maybe it's the Lento Law Group that has answers to

15   these questions.

16           MR. ALTMAN:  Your Honor, I have -- I have

17   spoken to all people that I could to try to

18   understand where the failure took place, and I was

19   unable to identify -- I am not questioning that the

20   firm knew -- the firm itself, somebody knew the case

21   was being refiled, but somehow that message did not

22   get to the people who actually executed it months

23   later.

24           THE COURT:  Yes.

25           MR. ALTMAN:  I don't have an explanation to

1 how it happened, why it happened, and who was

2 responsible.  It was certainly not an attempt to

3 evade Your Honor's jurisdiction by having this case

4 come back before Your Honor.

5          THE COURT:  Yes.

6          MR. ALTMAN:  That I can tell you because,

7 once again, had they wanted to do that, there were

8 many other ways of doing that.

9          THE COURT:  Well, I mean it's like getting

10 caught robbing a bank.  You could say there would

11 have been other ways that I could have robbed this

12 bank and look how stupid I was by doing it this way.

13          MR. ALTMAN:  I under --

14          THE COURT:  So --

15          MR. ALTMAN:  I understand, Your Honor.

16          THE COURT:  Also, you have to understand

17 that because you have a staff and you have people

18 that support you, you are responsible for their

19 conduct.  You can't evade responsibility by saying

20 yes, I asked them to do that.  The captain of the

21 ship is responsible for what happens there, and

22 you're responsible for all these matters.  Either you

23 straighten out the office or do something about it,

24 but you can't just shift the blame to other people

25 and say well, gee, I didn't know that -- I told them

what to do, they didn't do it the right way.  You

know, this is a -- you know, there's a real problem

here and it is really a bunch of excuses that I hear

now.  And the real question is what would be a fair

and appropriate way of disposing of this matter?  I

think there is no question at all that serious

violations of both our local rules and perhaps the

Rules of Professional Conduct were implicated in this

case.  I don't think there's any question about that.

What should be a fair disposition and ensure that Mr.

Rosario is protected?  I don't see him involved in

any of this.  This all seems to be lawyer stuff.  So

he should be protected.  But I'm pretty troubled that

no one seems to stand up here and, you know, take

responsibility and take charge.  Maybe this Lento

Firm may be the one.  I don't know.

        MR. ALTMAN:  Your Honor --

        THE COURT:  Who is going to be -- who is

going to be counsel of record?

        MR. ALTMAN:  Okay.  Your Honor, to address

your concerns, the Lento Law Group will find somebody

to substitute in Ms. Feinstein -- for Ms. Feinstein.

        THE COURT:  Yes.

        MR. ALTMAN:  That will take care of that

issue.  I have still been the primary counsel, and

1   brother counsel and I have had a good rapport and a

2   good working relationship, and, frankly, this matter

3   probably can be -- can be resolved.  We were in the

4   middle of -- we were in the middle of a mediation

5   when this all came to light.

6           THE COURT:  Yes.

7           MR. ALTMAN:  And I think the -- you know,

8   the posture to this point could be done.

9           In terms of responsibility, Your Honor,

10  it's not that somebody is passing the buck.  It's

11  just that I don't have an -- clearly, the firm is

12  responsible for not communicating to the people that

13  had to execute.

14          THE COURT:  You mean your firm?

15          MR. ALTMAN:  Not my firm.  I didn't have

16  anything to do with that.

17          THE COURT:  Okay.  So it's the Lento Firm?

18          MR. ALTMAN:  It's the -- it's the Lento

19  Firm.  I was not involved.  I had no knowledge about

20  Your Honor's order.  I had no knowledge --

21          THE COURT:  Okay.

22          MR. ALTMAN:  I did not see the form.  I had

23  nothing to do with the form.  I was pro hac-ed in

24  afterwards, so I'm not part of that.  But I'm here to

25  speak -- but I'm here to speak for the firm.  The

1    question is, Your Honor -- it's not whether there's

2    responsibility here, because there is.  The question

3    is what has the Lento Firm done to try to fix the

4    problem?  You know, it's not so much from the bottom

5    up.  There appears to be a violation here; therefore,

6    there must be punishment.  It's the question of there

7    appears to be something went wrong here.  What went

8    wrong, how do we fix it, and what can we do to keep

9    it from happening the next time?

10            THE COURT:  Yes.

11            MR. ALTMAN:  Now, clearly, the change of

12   personnel, that creates trouble for any firm.  It's

13   not an excuse, but it is a reality.

14            THE COURT:  Yes.

15            MR. ALTMAN:  Okay?  And all the firm can do

16   is put the best personnel in there, to train the best

17   personnel, to bring them up, to have reasonable --

18   you know, to try to take reasonable steps to see that

19   mistakes don't happen.  Can't always succeed, but

20   that's the goal.  And I can tell you that the Lento

21   Firm has improved its policies and procedures to try

22   to keep this kind of thing from happening going --

23            THE COURT:  Well, let me ask you this.  Are

24   you here speaking for the Lento Firm or are you here

25   speaking for yourself?

1    MR. ALTMAN:  I'm speaking for both.

2    THE COURT:  Okay.

3    MR. ALTMAN:  Mr. Lento asked me to --

4  because I -- you know, Mr. Lento asked me to

5  investigate --

6    THE COURT:  Okay.

7    MR. ALTMAN:  -- what had happened and to

8  try to -- to try to be able to explain to the Court

9  what had happened here.

10    THE COURT:  Yes.

11    MR. ALTMAN:  And I've told you everything

12  that I know --

13    THE COURT:  Okay.

14    MR. ALTMAN:  -- after a rather exhaustive,

15  you know -- rather exhaustive inquiry into what

16  happened here.  From my perspective, at least with --

17  from my perspective, you know, I don't think I have

18  any liability here because I wasn't part of the --

19  you know, what has caused the Court the problem.  I

20  was never supposed to be part of the administration,

21  I was to be pro hac-ed in afterwards which happened,

22  I had no knowledge -- until Your Honor pointed out at

23  that hearing the second form, which was the tracking

24  form, I had no knowledge that that form had ever even

25  existed.

1       THE COURT:  Yes.

2       MR. ALTMAN:  That was the first time I saw

3 it, and as soon as Your Honor pointed it out, I

4 realized this is a problem.  And I recognized that,

5 and immediately I went to try to figure out what had

6 happened.

7       THE COURT:  Yes.

8       MR. ALTMAN:  And I spoke to everybody I

9 could speak to about what had happened.  So I --

10 there's not excuses here, Your Honor.  I'm trying to

11 explain in kind of a somewhat clinical scientific

12 manner what might have happened here and how there

13 was a failure.  In terms of how Your Honor should

14 deal with it, I'm not saying that there shouldn't be

15 some accountability, but there's a difference between

16 accountability and improvement and punishment.

17       THE COURT:  Yes.

18       MR. ALTMAN:  I think that there is no

19 evidence that what took place here was an attempt to

20 evade Your Honor's jurisdiction.  We could have -- I

21 just -- there is no evidence of that.  I mean you

22 could say yes, it's a possibility, but it just

23 wasn't.  I wasn't concerned -- had I known about your

24 order in terms of putting information in the

25 complaint about the promoter liability, we would have

1  done it.  I believe that in a good faith -- there was

2  a good faith basis for bringing that.

3          THE COURT:  Yes.

4          MR. ALTMAN:  I can't speak for what Mr.

5  Feinstein said when he didn't -- you know, when he

6  was originally involved in the case, but I can tell

7  you, you know, I reviewed the complaint, I believe in

8  good faith that Mr. -- you know, that Torres

9  Productions can have liability here.  I stand -- I

10  stand behind that.  We've provided that in our

11  response.  So --

12          THE COURT:  You told me -- I think you

13  might have already answered this question, but you

14  met with Mr. Rosario --

15          MR. ALTMAN:  I did not meet --

16          THE COURT:  -- before you came into the

17  case?

18          MR. ALTMAN:  I did not meet with him, but I

19  spoke with him and I had seen his interview notes.  I

20  know the firm met with him long before I ever got

21  involved, before the complaint was drafted.  At some

22  point, I know I saw his interview notes, okay?  I was

23  familiar with what happened based on -- based on that

24  note-taking, the complaint.

25          THE COURT:  Now, has Mr. Rosario authorized

1   your firm to represent him?

2           MR. ALTMAN:  Yes.

3           THE COURT:  Okay.

4           MR. ALTMAN:  And I specifically -- you

5   know, specifically spoke with Mr. Rosario.  I

6   didn't -- and he is -- you know, I've specifically

7   spoken with Mr. Rosario about his case.

8           THE COURT:  You mean on the telephone?

9           MR. ALTMAN:  Yes.

10          THE COURT:  Okay.

11          MR. ALTMAN:  I physically am in Michigan,

12  Your Honor.

13          THE COURT:  Yes.

14          MR. ALTMAN:  Mr. Rosario is disabled,

15  obviously, and he is in New Jersey.

16          THE COURT:  Now, Mr. Griffin, we -- Mr.

17  Altman referred to some mediation that was going on?

18          MR. GRIFFIN:  Through Judge Strawbridge.

19          THE COURT:  Oh, okay.

20          MR. GRIFFIN:  Yes.

21          THE COURT:  For the -- okay.

22          MR. GRIFFIN:  There was mediation that was

23  going on.  There were conversations between Judge

24  Strawbridge and just myself, Judge Strawbridge and

25  just Mr. Altman by himself, and there seemed to be an

38

1   active discussion, but then this issue was discovered

2   by --

3            THE COURT:  But Mr. --

4            MR. GRIFFIN:  -- Judge Strawbridge.

5            THE COURT:  -- Torres, what about him?  Was

6   he involved in this?

7            MR. GRIFFIN:  I can't say that.  I would

8   tend to think that there were no conversations

9   between Judge Strawbridge and Mr. Torres because

10  there had always been, to my understanding, an

11  existing order in place that he had to have counsel

12  because --

13           THE COURT:  Yes.

14           MR. GRIFFIN:  -- I believe, in part, he was

15  part of an incorporation.

16           THE COURT:  Sure, yes.

17           MR. GRIFFIN:  So I do not believe that

18  there were any conversations that ever occurred

19  between Judge Strawbridge and --

20           THE COURT:  Yes.

21           MR. GRIFFIN:  -- Mr. Torres directly.  I

22  don't know that.

23           THE COURT:  Because it would --

24           MR. GRIFFIN:  I would guess that.

25           THE COURT:  It would appear to me that if

1    there were to be a settlement in this case, whoever

2    the lawyer is, it would have to involve Mr. Torres

3    because Mr. Torres would have a cross-claim against

4    the restaurant if he's found liable for the

5    violation.  So --

6          MR. GRIFFIN:  I would -- I would think

7    you're correct.

8          THE COURT:  Yes.

9          MR. GRIFFIN:  And the fact that he is

10   currently in a default position, so he's -- you know,

11   he's behind the eight ball --

12         THE COURT:  Yes.

13         MR. GRIFFIN:  -- so to speak, already.

14         THE COURT:  Okay.  Okay.  Well, let's think

15   about this.  Is there anything else, Mr. Altman, that

16   you would like to add to the record today?

17         MR. ALTMAN:  Your Honor, I'd just ask that

18   in deciding what to do here, you focus on the -- that

19   the parties that are involved here acted in good

20   faith, even if erroneously, that I believe the proper

21   accountability here is to remedial in nature in terms

22   of making sure the procedures and policies do the

23   right job in terms of preventing this kind of

24   situation from happening again, and that the Court

25   focus on that is -- would serve better justice

1   overall not just for -- not just for Mr. Rosario and

2   the defendants, but that it would -- it would further

3   justice for, you know, other clients who will be the

4   beneficiary of better policies and procedures, and

5   that the Court -- you know, the Court consider that

6   as being the appropriate what to do here and believe

7   the parties involved that this was not -- certainly

8   this was not -- there was no intent here to deceive

9   the Court, to deceive anyone, even though that there

10  are mistakes that have been made here.

11       THE COURT:  Yes.  And as I understand it,

12  these occurred after -- these had occurred before you

13  came into the case, and, therefore, that was the

14  Lento Firm's dealing?

15       MR. ALTMAN:  That is -- that is -- you

16  know, that is true as a (indiscernible) perspective.

17  I had no knowledge.

18       THE COURT:  Except for the October 25th

19  matter, which, of course, that was your issue?

20       MR. ALTMAN:  Correct, Your Honor.

21       THE COURT:  Yes.

22       MR. ALTMAN:  And I apologize and --

23       THE COURT:  Yes.

24       MR. ALTMAN:  -- I am sorry.  You know, my

25  medical condition -- you know, that -- frankly, when

1   my eyesight in my one remaining eye crashed and --

2           THE COURT:  But that -- I thought that

3   was --

4           MR. ALTMAN:  I'm not -- I'm not trying to

5   make excuses.

6           THE COURT:  That was technical.  That -- in

7   other words, the response was there, you just

8   couldn't get it here?

9           MR. ALTMAN:  I couldn't -- Your Honor, I

10  struggled just to be able to see the screen to try to

11  file the response.

12          THE COURT:  Okay.

13          MR. ALTMAN:  It was an incredible struggle.

14          THE COURT:  So --

15          MR. GRIFFIN:  Judge, if I could just add

16  one thing?  The fact that Mr. Vance checked and there

17  was nothing in your system, I can represent I

18  received it.  I don't have it in front of me, but

19  there was an email that was sent, I was copied on.

20  It was to your chambers.  It's possible that the

21  email for your chambers was incorrect.  I did not

22  check it.  But I can represent that I did receive a

23  copy of it in an email that went out directed to Your

24  Honor.  So the fact that it's not anywhere in your

25  email system, maybe it was an incorrect address for

42

1  you.  But I can represent that I did receive it on

2  the day in question --

3          THE COURT:  Yes.

4          MR. GRIFFIN:  -- in an email that

5  essentially explained, Your Honor, Keith Altman here,

6  I tried to file it, I'm having trouble, I wanted to

7  make sure you had a copy.  So in all fairness, that

8  is making that part of their whole.

9          THE COURT:  Okay.

10          MR. GRIFFIN:  So maybe it never got to you

11  because the email address that he sent it to was

12  incorrect.  I don't know that.  I can only say I got

13  it and I got it on the day in question.

14          THE COURT:  Yes.

15          MR. ALTMAN:  Your Honor, literally, I was

16  limited to trying to use this to type, so --

17          THE COURT:  Well, okay.

18          MR. ALTMAN:  -- it's entirely possible I

19  mistyped Your Honor's email address.

20          THE COURT:  Okay.  Very well.  We'll take

21  the matter under advisement and we'll get back to

22  you.  Thank you.

23          MR. ALTMAN:  Thank you, Your Honor.

24          MS. FEINSTEIN:  Thank you, Your Honor.

25          MR. GRIFFIN:  Thank you, Your Honor.

43

1          THE COURT:  All right.

2          MR. ALTMAN:  Just to be clear, I'll get you

3   Monday the -- kind of the log of our efforts?

4          THE COURT:  Please do so.

5          MR. ALTMAN:  Okay.  And I'll have my team

6   send the document to chambers immediately, is that

7   okay?

8          THE COURT:  That would be fine.

9          MR. ALTMAN:  Thank you, Your Honor.

10         MS. FEINSTEIN:  Thank you, Your Honor.

11         (Proceedings adjourned, 2:50 p.m.)

12

13                    *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6                           CERTIFICATION

7

8          I, Michael Keating, do hereby certify that

9    the foregoing is a true and correct transcript from the

10   electronic sound recordings of the proceedings in the

11   above-captioned matter.

12

13

14
       11/15/21
15   _____          _____

16   Date                      Michael Keating

17

18

19

20

21

22

23

24

25

# UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF
# PENNSYLVANIA

| | |
|---|---|
| **EDUARDO ROSARIO** : | |
| **Plaintiff** : | |
| : | |
| **v.** : | |
| : | **Civil Action No. 2:20-cv-02966-MSG** |
| : | |
| **ALEX TORRES PRODUCTIONS, INC., et al.** : | |
| **Defendants** : | |

## RESPONSE TO ORDER TO SHOW CAUSE

NOW COME attorneys Keith Altman and Joan Feinstein (Plaintiff's counsels) and file this response to this Court's Order to Show Cause (ECF # 9), and respectfully state the following:

Attorneys hereby respond to Your Honor's Order #29 issued September 30th, 2021. Attorneys will respond to Your Honor's concerns following the same order as established in Order #29:

## I. Failure to accurately certify that there were no related cases in violation of Pennsylvania Rule of Professional Conduct 3.3(a)

Rule 3.3(a) of the Pennsylvania Rules of Professional Conduct ("PRPC") establishes that "[a] lawyer shall not knowingly…(1) make a false statement of a material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." *Pa. RPC* 3.3(a)(1). In the present case, there was an error in the civil cover sheet. Your Honor rightfully demands an explanation of why counsels should not be subjected to sanctions for violation of PRPC 3.3(a). There are two possibilities, either: i) counsels intended to evade Your Hour's Court, or ii) it was an administrative error:

### a. *There was no intent to evade Your Honor's Court.*

It does not make sense that counsel would want to evade Your Honor's Court when counsel and Plaintiff had a good faith claim to bring before the Court. As explained on numeral II below, counsel (via Plaintiff) had a good faith basis to bring a claim against Alex Torres Productions because there is no prohibition as a matter of law against event promoter's liability and against La Guira, Inc as to the company responsible for the maintenance and condition of the facility that violates the American with Disabilities Act and the Pennsylvania Human Relations Act.   If Plaintiff truly intended to evade this Court, Plaintiff could easily have waited more than one year to refile or could have filed the case in New Jersey.  Plaintiff did neither of those things suggesting that the erroneous information on the tracking sheet was an administrative error.

### b. *The erroneous information in the Civil cover sheet was a good faith administrative error.*

Rule 3.3(a) of the Pennsylvania Rules of Professional Conduct establishes that "[a] lawyer shall not *knowingly*…(1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Pa. RPC 3.3 (emphasis added). Furthermore, "[a] person acts knowingly if that person acts consciously and voluntarily with an awareness and realization of what was happening and not because of mistake or accident or other innocent reason." *United States v. Hoffecker*, 530 F.3d 137, 181.

Counsel did not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer.  Once the matter had been raised, Plaintiff's counsel began to research what had happened. Only after this Court pointed out the error on the tracking sheet was Plaintiff's counsel able to piece together what had happened, leading to the instant response.

When the instant case was filed, neither the paralegal who prepared the documents nor the attorney who signed the document was aware that the case had been previously filed. Counsel genuinely thought they were providing a truthful answer that the case had not been once terminated. This was human error. Counsel became aware of this mistake when this Court pointed it out to them and required explanation.

Given that there was no intent to deceive the Court and that Ms. Feinstein acted in good faith when she signed the tracking sheet, this Court should conclude that the conduct here, while erroneous, was not done in bad faith and should not be the subject of sanctions.

As to Mr. Keith Altman specifically, Mr. Altman was not Plaintiff's counsel when the civil cover sheet and the tracking form were filed. He was to apply to be admitted *pro hac vice*. Mr. Altman did not fill it out, nor was he responsible for the civil cover sheet when it was filed. The Complaint and the civil cover sheet were filed on June 19, 2020, and Mr. Altman submitted his *pro hac vice* application to represent Plaintiff on June 22, 2020. Mr. Altman became Plaintiff's counsel after the error happened and thus should not be subjected to sanctions pursuant to PRPC 3.3(a).

Despite the unintentional error, Plaintiff's counsel acknowledges that the error has caused various difficulties and apologizes for any inconvenience caused to the Court or opposing counsel.

## II. Failure to Provide Authority in The Complaint Regarding Promoter Liability

Mr. Altman was not aware of the Court order issued on January 13, 2020 (19-cv-2222 Doc. No. 9) because Mr. Altman was not Plaintiff's counsel in that case. Moreover, Mr. Altman was not involved in the drafting of the present Complaint. Thus, Mr. Altman did not knowingly fail to provide authority in the Complaint regarding promoter liability. Furthermore, Mr. Altman believed (and continues to believe) that the claim was well-grounded in law and fact and has a good faith

basis for believing that Plaintiff has a cause of action against Defendant Torres. *Magerman v. Mercer*, 2018 U.S. Dist. LEXIS 17236, *6.

First, it is not established as a matter of law that event promoters are free from liability. Moreover, there is case law in the 3rd Circuit that establishes that event sponsors have a duty to use ordinary care: "as a general matter, a sponsor-lessee, like any commercial proprietor, owes to third-party invitees 'a duty to use ordinary care to have the premises in a reasonably safe condition.'" *Walters v. George Little Mgmt., LLC*, 2008 U.S. Dist. LEXIS 16971, *15-16 (citing *O'Connell v. New Jersey Sports and Exposition Authority*, 337 N.J. Super. 122, 128, 766). *See also Golonka v. Saratoga Teen and Recreation of Saratoga Springs Inc.*, 249 A.D. 2d 854, 855, 672.

This doctrine distinguishes between active and passive sponsors: "Where it has been established that an event sponsor "had such degree of control [over the event] that [it] could have averted the danger, or such superior knowledge that [it] should have foreseen and given warning of a danger not apparent to the plaintiff," such an active sponsor may be held liable for injuries suffered by invitees at the event…By contrast, in cases where "the defendant sponsors could not have exercised any authority or control over the conduct" at the event, the sponsors' liability for attendees' injuries has been held not to attach.". *Walters* (internal citations omitted).

Based on this doctrine, counsels and Plaintiff genuinely believed a good faith basis for the claim against Defendant Torres. During discovery, Plaintiff will learn more about the contractual relationship between Defendant La Guira and Defendant Torres and establish more accurately the extent of Defendant Torres' liability to Plaintiff.

### III.  Mr. Altman's Address on the Docket and in Pro Hac Vice Application.

The reason why Mr. Altman's address listed on the docket is the Lento Law Firm in Philadelphia, but his application for *pro hac vice* lists his practice as The Law Firm of Keith

Altman in Farmington Hills, Michigan is an error due to the following: Mr. Altman used to work as Of-Counsel for the Lento Law Firm. However, in March 2021, Mr. Altman stopped working as an Of-Counsel to the Lento Law Firm. Mr. Altman and the Lento Law Firm agreed to represent Plaintiff jointly. This is why there is confusion regarding the addresses. Mr. Altman will correct this error.

### IV.   Request for Ms. Feinstein to Appear by Video

Respectfully, Ms. Feinsteing rwuests that the Court allow her to appear by video at the November 10, 2021 hearing.  Ms. Feinstein is suffering from serious medical condition for which her physicians have advised her not to attend Court live.  She has been further advised nor even to see her clients in person.  Mr. Altman will be at the Court in person and will be addressing the Court.  Given Ms. Feinstein's medical condition and <r Altman's live presence, Ms. Feinstein respectfully asks the Court to be allowed to attend by video conference.

### V.   Conclusion

Based on the foregoing, Mr. Altman and Ms. Feinstein hereby request this Court to not impose sanctions for the alleged violation of PRPC 3.3(a) and for failing to provide authority regarding promoter's liability.

WHEREFORE, the undersigned counsels, respectfully request that this Court ender an Order, finding that the Plaintiff has established Good Cause for (1) failure to accurately certify that there were no related cases in violation of Pennsylvania Rule of Professional Conduct 3.3(a); and (2) failure to provide authority in the Complaint regarding promoter liability as ordered by the Court on January 13, 2020 (19-cv-2222 Doc. No. 9).

Dated: October 25, 2021.                    Respectfully Submitted,

THE LAW OFFICE OF KEITH ALTMAN

By:   */s/ Keith Altman*_____
      Keith Altman (P81702)
      The Law Office of Keith Altman
      Attorney for Plaintiff
      33228 West 12 Mile Road, Suite 375
      Farmington Hills, Michigan 48334
      Telephone: (516) 456-5885
      keithaltman@kaltmanlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 25, 2021, I electronically filed the foregoing document with the United States District Court and that a true copy of said document was sent to all parties through the Court's CM/ECF system.

By: */S/ Keith Altman*

KEITH ALTMAN, ESQ

The Law Office of Keith Altman

33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (516) 456-5885
keithaltman@kaltmanlaw.com

# UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**EDUARDO ROSARIO,**   Civil Action No. 2:20-cv-02966
                              *Plaintiff,*

v.

**ALEX TORRES PRODUCTIONS, INC., et al.**
                *Defendants.*

---

## DECLARATION OF LORI CRUSSELLE IN SUPPORT OF PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE

NOW COMES the Declarant, Lori Crusselle, and states:

1.  I am a senior litigation paralegal for the Law Office of Keith Altman.

2.  On October 25, 2021, at 10:14 p.m., I received an email from Keith Altman indicating that his Response to the Order to Show Cause could not be filed. This email (see attached herein) was also sent to opposing counsel and chambersofjudgerobreno@paed.uscourts.gov.

3.     When I logged onto my computer early on the morning of
October 26, 2021, I again, at the direction of Mr. Altman,
attempted to file the document. I was unable because Mr.
Altman's PACER login credentials do not permit filing in
this Court.

4.     At 11:18 a.m. on October 26, 2021, I attempted to call the
Clerk of the Court at (215) 597-7704. The Clerk's message
indicated that all staff was working remotely but to leave a
message with an email address for the clerk to return my
message. I left the case number and my email address,
loricrusselle@kaltmanlaw.com. I have not received any
response to this call.

5.     At 12:04 p.m. on October 26, 2021, I emailed Mr. Altman's
Response to the Order to Show Cause to
PAED_documents@paed.uscourts.gov. See attached email.
This email address is provided on the Court's website as an
avenue to submit documents if electronic filing difficulties
arise. I received no response to this email.

**DECLARATION OF**
**LORI CRUSSELLE**                    - 2 -                    CIVIL ACTION NO. 2:20-cv-02966

6.    Having not received any response to my attempts to contact

the Court on October 26, 2021, I again, on October 29, 2021,

emailed PAED_documents@paed.uscourts.gov with Mr.

Altman's Response to the Order to Show Cause. See

attached email. Again, I received no reply.

7.    Since October 29, 2021, I have made additional attempts to

use the PACER system for this Court. I have been unable to

successfully connect with PACER for this jurisdiction since

October 26, 2021.


Executed on November 11, 2021

/s/ Lori Crusselle
Lori Crusselle

## Re: Rosario. 2:2020=cv-09266

**Lori Crusselle** <loricrusselle@kaltmanlaw.com>
Fri 10/29/2021 11:56 AM
To: PAED_documents@paed.uscourts.gov <PAED_documents@paed.uscourts.gov>
Cc: Toni Renee Vierra <trvierra@kaltmanlaw.com>; Keith Altman <keithaltman@kaltmanlaw.com>

Please confirm that this document will be filed. We sent you the document on Tuesday morning after not being able to file in your e-filing system.

Thank you.

Lori Crusselle
Litigation Paralegal
Law Office of Keith Altman

---

**From:** Lori Crusselle <loricrusselle@kaltmanlaw.com>
**Sent:** Tuesday, October 26, 2021 10:04 AM
**To:** PAED_documents@paed.uscourts.gov <PAED_documents@paed.uscourts.gov>
**Cc:** Toni Renee Vierra <trvierra@kaltmanlaw.com>; Keith Altman <keithaltman@kaltmanlaw.com>
**Subject:** Fw: Rosario. 2:2020=cv-09266

Please see Mr. Altman's email to Judge Robreno yesterday evening. Unfortunately, we are unable to file this document via the ECF/CM website, even though Mr. Altman is connected to NextGen. If you will please file this document at your earliest opportunity, we would be extremely grateful.

Respectfully,

Lori Crusselle
Litigation Paralegal to Keith Altman
loricrusselle@kaltmanlaw.com
Law Office of Keith Altman

---

**From:** Keith Altman <keithaltman@kaltmanlaw.com>
**Sent:** Monday, October 25, 2021 8:14 PM
**To:** ChambersofJudgeRobreno@paed.uscourts.gov
<ChambersofJudgeRobreno@paed.uscourts.gov>
**Cc:** john griffin <jakegriffinlaw@gmail.com>; Lori Crusselle <loricrusselle@kaltmanlaw.com>; SD
<sd@kaltmanlaw.com>
**Subject:** Rosario. 2:2020=cv-09266

Your Honor,

I write this with a great deal of difficulty as I have suffered a catstrophic loss of most of my useful vison last weekend.

I attempted to file our response to your Honor's OSC but had technical difficulties.  I have attached it as evidence that it was completed as ordered and I will have one of my staff try to file or reach out to the help desk in the morning to see that it is filed.

I apologize for not being able to file though ECF tonight.

Respectfully,

Keith Altman

Keith Altman
The Law Office of Keith Altman
516-456-5885
keithaltman@kaltmanlaw.com
Licensed in California and Michigan